UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DENNIS HILTON, JR. Individually and on behalf of all similarly situated employees, § § § § | | |
| PLAINTIFF, § § | | NO: 4:23-CV-1865 |
| V. § § | | COLLECTIVE ACTION COMPLAINT |
| MILSTEAD AUTOMOTIVE, LTD, MILSTEAD MANAGEMENT, LLC, AMY MILSTEAD, § § § § | | JURY DEMAND |
| DEFENDANTS. § § § | | |

# Plaintiff's Original Complaint

Dennis Hilton, Jr. individually and as the class representative on behalf of all similarly situated employees, upon personal knowledge as to himself, and upon information and belief as to others, alleges the following:

## I. Summary

1. Plaintiff is a wrecker driver. Defendants (collectively "Milstead") were Plaintiff's joint employer until on or about August 2022, when Milstead terminated Plaintiff's employment to retaliate for his participation in a previous lawsuit and in violation of his rights. Plaintiff sues to recover damages incurred because of Milstead's unlawful termination under the Fair Labor Standards Act, Family Medical Leave Act, or both.

2. Plaintiff was a non-exempt employee. Milstead did not pay Plaintiff an hourly wage. Instead, they paid Plaintiff a "commission." Plaintiff regularly worked more than forty hours in a workweek. But Milstead did not pay Plaintiff an overtime wage calculated on his regular hourly wage. Plaintiff sues to recover minimum and overtime wages under the Fair Labor Standards Act ("FLSA") for Milstead's unlawful pay practices.

3. Plaintiff sues on behalf of similarly situated wrecker drivers and asks for collective action for all those that join the suit.

## II. Jurisdiction and Venue

4. The Court has original jurisdiction under 28 U.S.C. § 1331 because the matter is a federal question under 29 U.S.C. § 216.

5. Venue is proper in the Houston Division of the Southern District of Texas because Defendants reside and conduct business in this District. 28 U.S.C. § 1391.

## III. Parties

6. Plaintiff is an individual residing in Texas; parties may serve him through his undersigned attorney.

7. Defendant Milstead Management, LLC is a Texas limited liability company that resides and conducts business in Texas. Its corporate office is located at 29707 W. Hawthorne Dr., Spring, Texas 77386, and it may be served through its

registered agent Dossey & Jones, PLLC, 600 River pointe Dr. Ste. 200, Conroe, Texas 77304.

8. Defendant Milstead Automotive, Ltd. Is a Texas Limited Partnership, its general partner is Milstead Management, LLC. Its corporate office is located at 29707 W. Hawthorne Dr., Spring, Texas 77386, and it may be served through its registered agent Dossey & Jones, PLLC, 600 River pointe Dr. Ste. 200, Conroe, Texas 77304.

9. Defendant Amy Milstead is an individual. She may be served at 1415 Spring Hills Drive, Spring, Texas 77386 or wherever she may be found.

## IV. Facts

### A. Enterprise Coverage Facts

10. During all relevant times, Defendants Milstead Automotive, and Milstead Management, LLC were and, upon belief remain, a joint, single, or continuous enterprise under Defendant Amy Milstead's operation or common control for the common business service of running a garage and wrecker services for profit.

11. Defendant Amy Milstead is the Manager of Milstead Management, LLC.

12. Defendant Milstead Management, LLC is the General Partner of Milstead Automotive Ltd.

13. Amy Milstead has substantial control over all corporate Defendants.

14. Defendants, singularly or jointly, employ more than 50 employees within 75-mile radius of the place of business.

15. Milstead is engaged in commerce between the states and on behalf of federal programs provides tow operations for government entities and international fleet services.

16. Milstead may sell an automobile or the like, but such sales are not its primary business.

17. Milstead's primary purpose is a non-carrier commercial garage.

18. Milstead is or was not a retail service establishment during all relevant times.

19. Milstead's annual revenues from non-retail sales exceed twenty-five percent.

20. Milstead's gross annual sales for all relevant years exceed $500,000.

### B. Non-Exempt Employment Facts

21. Hilton worked for Milstead from 2020 through 2022.

22. Hilton was a light-tow operator who managed tows and road-side services for passenger cars and trucks, and light-duty commercial vehicles.

23. He provided these services to retail and non-retail customers with vehicles weighing less than 10,000 curb weight pounds daily.

24. He provided the services in and around Harris and Montgomery counties.

25. He neither provided nor had an expectation that he would provide interstate services.

26. He did not perform duties that exempt his work from FLSA minimum wage or its overtime requirements.

### C. Pay

27. Milstead neither paid Hilton an hourly or salary wage.

28. Milstead did not pay Hilton a bona fide commission wage.

29. Milstead paid Hilton a percentage of the revenue his truck generated.

30. Milstead did not pay Hilton the FLSA minimum wage for all hours worked.

31. Hilton was neither a mechanic nor a wrecker mechanic. Providing services or repairs was not his primary duty whether at his location or away from Defendants' place of business.

32. Repairs or services Hilton provided were *de minimums*, nonmechanical repairs that did not affect the safe operation of the vehicles he towed.

33. Hilton did not perform duties for requesting, stocking, or dispensing parts.

34. Hilton was not responsible for sales to or obtaining orders from Milstead's customers. Instead, Milstead's dispatch provided Hilton with his assignments. He was also prohibited from soliciting retail business and sales, and government entities, Milstead's management, or other aspects set the prices Hilton charged.

35. Hilton did not have opportunities to develop business or increase his pay because he did not provide the diagnostics, parts, services, or repairs that Defendants based his wages.

36. To earn more wages, Hilton had to work more hours.

37. Defendants did not pay Hilton more than $100,000.00 annually during all relevant times.

38. Hilton did not supervise any employees.

39. Hilton did not perform office or non-manual work because driving a wrecker requires manual operation.

40. Hilton provided the service that allowed Milstead to fulfill requirements to and benefit from its business with the USPS.

### D. Unpaid Overtime Facts

41. Milstead did not keep accurate records of the hours Hilton worked or the hourly wage he earned.

42. Hilton was and did work more than forty hours a workweek, often in six twelve-hour shifts Monday through Sunday, usually with one day off.

43. Milstead did not pay Hilton his proper overtime wage for all hours worked over forty in the workweek.

### E. Intentional and Willful

44. Milstead knew or should have known that Hilton was not exempt from FLSA overtime.

45. Milstead did not try to investigate the lawfulness of its pay practices.

46. Milstead provided unlawful wages despite legal advice.

47. Milstead failed to correct its unlawful pay practices after it became reasonably aware of its unlawful pay practices.

48. Milstead's unlawful pay practices were willful.

### F. Unlawful Employment Actions

49. Before this matter, Hilton was a class member in another FLSA lawsuit against Milstead for payment of wages in prior years.[1]

50. While performing his work duties, Hilton injured his foot.

51. He asked for reasonable accommodation to where a different shoe or boot than Milstead required.

52. When Milstead denied his reasonable accommodation, Hilton asked for some days off to address his injury.

53. Milstead fired Hilton instead.

54. Hilton was qualified for his position.

55. Hilton's protected participation in a FLSA lawsuit, his accommodation request, medical leave, or a combination were the unlawful reasons for Milstead's adverse employment action.

---

[1] As of this filing, that matter continues, *Jackson v. R & A Towing, et al.*, Civ. No. 4:21-cv-00618, SDTX, Houston, Maj. Bryan.

## V. Collective Action Allegations

56.     There are an unknown number of similarly situated current and former non-exempt employees to whom Milstead denied overtime pay in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

57.     Milstead brings his FLSA claim individually and on behalf of all similarly situated individuals (the Collective Class).

58.     An individual is a potential Collective Class member if:

   a. Milstead employs or employed the individual currently or in the three-years before this suit;

   b. Milstead did not pay the individual a weekly salary or guaranteed wage equal to the applicable minimum; and

   c. Milstead did not pay the individual an overtime wage equal to 1.5 times their weekly base wage for all hours worked over forty in the workweek.

59.     Milstead knows and can readily identify these possible Collective Class members.

60.     The Court can review and answer these merit questions collectively because this suit is limited to employees who are presumed non-exempt. Milstead's failure to pay a weekly salary or other guaranteed wage would exclude those employees from all overtime exemptions requiring a salary element. Nor do Milstead qualify for non-salary overtime exemptions because they are not an intestate motor carrier, are not

in the main business of selling or reselling motor vehicles to the ultimate consumer, and do not qualify for other business or employee specific overtime exemptions. Thus, these discrete questions identify the actual Collective Class harmed by Milstead's FLSA violations and those members' claims, except for damages, do not require individual analysis.

61. Milstead is liable under the FLSA for failing to properly compensate Hilton and the Collective Class.

62. Milstead policy, practice, and patterns were to not pay Hilton and the Collective Class overtime compensation of 1.5 times their regular rate for all hours worked over forty per workweek.

63. Milstead's unlawful payment practice was intentional, willful, and repeatedly violated Hilton's and the Collective Class's FLSA rights for a proper premium overtime wage for all hours worked over forty hours in the workweek.

64. Milstead's corporate policy was to minimize labor costs by not paying neither an hourly wage nor overtime.

## VI. Causes of Action

### A. Fair Labor Standards Act – Overtime Wages
### (Hilton and Collective Class against all Defendants)

65. Hilton realleges and incorporates by reference all allegations in the preceding sections.

66. The overtime wage provisions in the FLSA and its federal regulations apply to Milstead and protect Hilton and the members of the Collective Class.

67. Hilton and the Collective Class regularly worked more than forty hours per workweek.

68. Milstead failed to pay Hilton and the Collective Class the premium overtime wages to which the FLSA entitles them.

69. Hilton and the Collective Class are owed 1.5 times their regular rate of pay for all hours worked over forty per workweek.

70. Milstead's FLSA violations have caused Hilton and the Collective Class damages in the form of unpaid overtime compensation in amounts Hilton and the Collective Class will show at trial.

71. Milstead's unlawful wage payments lacked good faith. Thus, Milstead is liable for liquidated damages in amount equal to the unpaid wages.

72. Milstead's unlawful wage payments were willful. Thus, Milstead is liable for unpaid wages for no less than three-years from the date of this lawsuit.

73. Milstead is liable to Hilton and the Collective Class for their attorneys' fees and costs associated with prosecuting this claim.

### B. Fair Labor Standards Act – Retaliation (Hilton against Milstead Automotive)

74. At all relevant times, the FLSA's protections against retaliation applied to Milstead and Hilton.

75. Hilton participated in a FLSA lawsuit for overtime during his employment, and at the time Milstead terminated his employment.

76. Milstead retaliated against Hilton when it failed to provide him with reasonable accommodation to wear a modified shoe or boot, protected leave to attend to his foot, and ultimately terminating his employment.

77. There is a causal link between these adverse employment actions and Hilton's protected activity.

78. Defendant's adverse employment action harmed Hilton.

### C. Violation of the FMLA
### (Hilton against Milstead Automotive)

79. Hilton realleges and incorporates by reference all allegations in the preceding sections.

80. Hilton is an eligible employee as defined under the FMLA. In the twelve months before his protected leave, he worked more than 1250 hours singularly, jointly or in succession.

81. Defendants are either single, joint, or successor employers under the FMLA.

82. The FMLA requires Defendant Milstead Automotive as Hilton's employer to provide him with up to twelve workweeks of unpaid leave for a serious health condition that makes [Hilton] unable to perform the functions of the position of such employee.

Original Petition—*Hilton v. Milstead Automotive, Ltd.*—Pg. 11

83. The FMLA also requires Milstead to restore Hilton to the same position or a position comparable to the one he held before his qualifying absence. Failure to do so violates the FMLA.

84. Hilton's reason for leave was a qualified condition requiring continuous medical treatment, recovery, and care.

85. Hilton gave Milstead adequate and proper notice of his leaving.

86. It is unlawful for Milstead to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the FMLA.

87. It is also unlawful for an employer to discharge or in any other manner retaliate or discriminate against any employee for opposing any practice made unlawful under the FMLA.

i. **FMLA Interference**

88. Milstead interfered with Hilton's exercise of his FMLA rights when it failed to reinstate him to the job he held prior to his leave.

89. Milstead would have reinstated Hilton or otherwise not interfere with Hilton's FMLA benefits had he not exercised his FMLA rights.

90. Milstead's interference with Hilton's right to FMLA benefits harmed Hilton by depriving him of actual wages.

ii. **FMLA Retaliation**

91. Milstead terminated Hilton's employment in retaliation for taking the FMLA leave.

92. Hilton's FMLA leave was at a minimum a factor in Milstead's decision to terminate Hilton's employment.

93. Milstead's retaliation against Hilton for exercising his FMLA rights harmed Hiton by depriving him of actual wages.

94. In all cases, Hilton was willing, able, and qualified to perform his duties.

95. Milstead is liable to Hilton for his actual damage.

96. Hilton seeks equitable relief of reinstatement.

97. Milstead is liable to Hilton for attorneys' fees and costs for the prosecution of this claim.

## VII. Injunctive Relief

### A. Preliminary Injunction

98. Plaintiffs will likely suffer irreparable injury if Milstead does not restrain from unlawful employment practices while this suit is pending. Milstead is not a retail service establishment and has not been since no later than 2018. Despite a prior lawsuit claiming similar allegations and adverse findings from a competent court in this jurisdiction, Milstead has failed to correct its pay practices so that they reasonably comply with the Fair Labor Standards Act.

99. There is no adequate remedy at law here because the legal remedy is not effective to balance the harm a preliminary injunction will provide.

100. Milstead has claimed that its tow operators are employees exempt from overtime. This test requires analysis of the employer's annual sales. In this case, Milstead's lack of retail standing shows that it is unlikely to prevail on such exemption. Failing to provide injunctive relief will allow Milstead to make unlawful wage payments under the disguise that it is a retail service establishment. When the review year concludes, the burden is placed on the employees to establish a lawsuit for the back wages. Milstead benefits overall from those that do not join.

101. There is a substantial likelihood that Hilton and the class will prevail on the merits because Milstead has failed to establish a lawful overtime exemption and, upon belief, Milstead has not change its operations in a manner that will establish such an exemption.

102. For the same reasons that Milstead can benefit from the lack of a temporary injunction, the harm faced by the plaintiffs outweighs the harm that Milstead could incur because of the preliminary injunction.

103. A preliminary injunction that prevents Milstead from unlawful wage payments is not against public policy; indeed, it promotes public policy on payments for one's labor.

104. Plaintiff asks the Court to waive bond or provide a nominal amount for the issuance of the preliminary injunction. Hilton and his counsel bring this suit in the interest of public policy benefiting employees, Milstead has failed to establish an overtime exemption in 2018, 2019, 2020, and 2021 on similar facts, and such bond

financially burdens Hilton. Waiving bond or granting a nominal amount is within the Court's discretion when balanced with the strength of the plaintiff's case the lack of a bond only prevents judicial enforcement and the defendant does not risk harm, and a bond places the plaintiff at financial risk.

105. Hilton asks the Court to set his application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction against Milstead ordering it to cease its unlawful wage payments no less than through trial.

### B. Permanent Injunction

106. After trying Hilton's claims, he asks the Court to grant permanent injunctive relief ordering Milstead to cease its unlawful wage payments.

## VIII. Prayer

Hilton, individually, and on behalf of all other similarly situated persons requests that this Court:

### A. FLSA Overtime Relief

1. Allow notice of this suit to the Collective Class either through Hilton or the Court that informs the potential Collective Class member that Hilton has filed this civil action, the nature of the action, and their right to join the lawsuit if they believe they were denied proper wages.

2. Award Hilton and the Collective Class their unpaid overtime wages charged jointly and severally to the Defendants.

3. Award Hilton and the Collective Class liquidated damages equal to unpaid overtime wages charged jointly and severally to the Defendants.

4. Issue a declaratory judgment that Defendants' payment practices are unlawful under the FLSA.

5. Award Hilton and the Collective Class reasonable attorneys' fees and costs of the action charged jointly and severally to the Defendants; and

6. All other relief Hilton or the Collective Class are entitled in law or equity.

Hilton, individually, requests that this Court:

### B. Unlawful Termination

7. Award Hilton lost wages and other denied compensation arising from the FLSA, FMLA or both for Milstead's retaliatory conduct and FMLA violations.

8. Award Plaintiff liquidated damages equal to Hilton's FLSA retaliation, FMLA, or both damages and charged against the FMLA Defendants jointly and severally.

9. Award Plaintiff Prejudgment interest at the prevailing rate for Plaintiffs' FMLA damages charged against the FMLA Defendants jointly and severally.

10. Award Plaintiff Post-judgment interest at the prevailing rate for Plaintiffs' FMLA damages charged against the FMLA Defendants jointly and severally.

11. Award Plaintiff equitable relief including reinstatement, or, in lieu, front pay charged against the FMLA Defendants jointly and severally.

12. Award Plaintiff reasonable attorneys' fees and costs of suit for the prosecution of his FMLA claims; and

13. All other relief Plaintiff is entitled in law or equity.

        Respectfully submitted,

        Wilson Wehmeyer, PLLC

        /s/ William Carlton Wilson

        William "Carl" Wilson
        SBOT 24090472
        SDTX 2412597
        carl@wilsonwehmeyer.com
        12012 Wickchester Lane, 470-B
        Houston, Texas 77079
        713-670-6891 Office
        888-490-3698 Facsimile
        Attorneys for Dennis Hilton